IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA22-659

Filed 02 May 2023

Cabarrus County, No. 18 CRS 54083

STATE OF NORTH CAROLINA

v.

CHRISTINE MARIA CHISHOLM, Defendant.

Appeal by defendant from judgment entered 2 February 2022 by Judge L. Todd Burke in Cabarrus County Superior Court. Heard in the Court of Appeals 7 March 2023.

*Attorney General Joshua H. Stein, by Assistant Attorney General Joseph R. Shuford, for the State.*

*Vitrano Law Offices, PLLC, by Sean P. Vitrano, for the Defendant-Appellant.*

CARPENTER, Judge.

Christine Maria Chisholm ("Defendant") appeals from judgment after a jury convicted her of felony speeding to elude arrest, misdemeanor resisting officers, and misdemeanor giving fictitious information to an officer. On appeal, Defendant argues the trial court erred in denying her motion to dismiss the charge of felonious speeding to elude arrest. After careful review, we discern no error.

## I.      Factual & Procedural Background

On 14 September 2018, Cabarrus County Sheriff Sergeant Cody Rominger, and his trainee, Deputy Tyler Cannady, were on patrol on State Highway 49, a four-lane

road. Deputy Cannady was driving their marked patrol car, and both officers were in uniform. As the officers were passing a black BMW, Sergeant Rominger observed Defendant texting while driving and motioned to her to put the phone down. The officers passed Defendant again and noticed "she was still on the phone[,]" so they ran her tag, discovered her tag was expired, and initiated a traffic stop. Defendant pulled over right away, and the officers requested her license and registration. According to Sergeant Rominger, Defendant did not provide any documentation, but gave the name and date of birth of "Olivia Chisholm." After running the name "Olivia Chisholm" through the computer terminal, the officers realized: (1) Defendant was not Olivia, and (2) the last name Defendant provided was the same as the registered owner of the vehicle—Christine Chisholm. Using the name "Christine Chisholm" in their search, the officers obtained a DMV photograph and records describing tattoos, which matched Defendant's tattoos, and learned Defendant's license was revoked.

The officers attempted to confirm Defendant's true identity by asking Defendant her name twenty to thirty times. Defendant refused to concede her name was Christine and "rolled the window up," only rolling it down "a little bit" when speaking to the officers. After twenty to thirty minutes of unheeded requests for Defendant's name, appropriate driving documentation and eventually to exit the vehicle, Deputy Cannady struck the passenger window with the intent to remove Defendant from the vehicle. As soon as Deputy Cannady started to hit the window, Defendant "took off" and proceeded to "go through the parking lot, hit the curb, go

through the ditch, onto [Highway] 49," headed south towards Charlotte. Sergeant Rominger and Deputy Cannady ran back to their patrol vehicle and pursued Defendant southbound on Highway 49.

With the blue lights and siren on and while traveling "at a relatively high rate of speed," Sergeant Rominger testified Defendant was still "going way faster" than the officers. Sergeant Rominger could "see [Defendant's] car going towards Charlotte [at] a high-rate of speed and going in and out of vehicles." According to Sergeant Rominger, the pursuit lasted "maybe for a half of a mile" before it was terminated because "[Defendant] was going too fast for the conditions," and the officers had lost sight of her. He estimated Defendant was traveling "over a hundred miles an hour." Approximately thirty to forty-five seconds after he ceased pursuing Defendant, Sergeant Rominger observed Defendant's crashed vehicle sitting at the bottom of a hill, "smoking pretty bad," with Defendant still in the driver's seat. No other vehicles were involved in the accident. Sergeant Rominger and Deputy Cannady removed Defendant from the vehicle, detained her, and called EMS and the fire department. Paramedics transported Defendant to the hospital, which released her to police custody later the same day.

On 1 October 2018, the grand jury indicted Defendant for three offenses, including felony fleeing or eluding arrest with a motor vehicle, in violation of N.C. Gen. Stat. § 20-141.5. To elevate the offense to a felony, the State alleged two aggravating factors were present at the time of the violation: (1) speeding in excess

of fifteen miles per hour over the legal speed limit, and (2) driving when the person's driver's license was revoked.[1]

On 2 February 2022, Defendant's jury trial commenced before the Honorable L. Todd Burke in Cabarrus County Superior Court. The State introduced a photograph of Defendant's wrecked vehicle, which the trial court admitted as State's Exhibit 2. At the close of the State's evidence and again at the close of all evidence, Defendant moved to dismiss the felony charge for insufficiency of the evidence. The trial court denied both motions, and the jury found Defendant guilty of all three offenses. The trial court entered judgment and sentenced Defendant to imprisonment for eight to nineteen months, suspended the execution of that sentence, and placed her on supervised probation for thirty-six months.

## II. Jurisdiction

This Court has jurisdiction to address Defendant's appeal from a jury conviction pursuant to N.C. Gen. Stat. § 7A-27(b) (2021) and N.C. Gen. Stat. § 15A-1444(a) (2021).

## III. Issue

The sole issue before this Court is whether the trial court erred in denying Defendant's motion to dismiss the felony charge of speeding to elude arrest due to insufficient evidence.

---

[1] Defendant stipulated that her driver's license was revoked at the time.

## IV.    Standard of Review

This Court "reviews the trial court's denial of a motion to dismiss *de novo*." *State v. Smith*, 186 N.C. App. 57, 62, 650 S.E.2d 29, 33 (2007) (citation omitted). "Under a *de novo* review, [this C]ourt considers the matter anew and freely substitutes its own judgment for that of the lower tribunal." *State v. Biber*, 365 N.C. 162, 168, 712 S.E.2d 874, 878 (2011) (citation and internal quotation marks omitted).

## V.    Analysis

On appeal, Defendant argues the State failed to present substantial evidence to support the jury's finding that Defendant was speeding in excess of fifteen miles per hour over the legal speed limit at the time of the offense. This finding was one of the two aggravating factors invoked to elevate the offense of speeding to elude arrest from a Class 1 misdemeanor to a Class H felony. *See* N.C. Gen. Stat. § 20-141.5(a), (b)(1) (2021). The State contends there was substantial evidence that Defendant was speeding in excess of fifteen miles per hour over the legal speed limit, and thus, the trial court properly denied Defendant's motion to dismiss the charge of felonious speeding to elude arrest. After careful review, we agree with the State.

"When ruling on a defendant's motion to dismiss, the trial court must determine whether there is substantial evidence (1) of each essential element of the offense charged, and (2) that the defendant is the perpetrator of the offense." *Smith*, 186 N.C. App. at 62, 650 S.E.2d at 33 (citation omitted). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion." *State v. Franklin*, 327 N.C. 162, 171, 393 S.E.2d 781, 787 (1990) (citation omitted). "If there is any evidence tending to prove guilt or which reasonably leads to this conclusion as a fairly logical and legitimate deduction, it is for the jury to say whether it is convinced beyond a reasonable doubt of defendant's guilt." *Id.* at 171–72, 393 S.E.2d at 787; *see State v. Miller*, 363 N.C. 96, 99, 678 S.E.2d 592, 594 (2009).

To determine whether substantial evidence exists, "the trial judge must view all the evidence, whether competent or incompetent, in the light most favorable to the State, giving the State the benefit of every reasonable inference to be drawn from it and resolving any contradiction in the evidence in its favor." *State v. Lee*, 348 N.C. 474, 488, 501 S.E.2d 334, 343 (1998) (citation and internal quotation marks omitted). "Competent evidence is evidence that is admissible or otherwise relevant." *State v. Bradley*, 282 N.C. App. 292, 296, 870 S.E.2d 297, 301 (2022) (citation omitted).

Moreover, in ruling on a motion to dismiss, "[t]he trial court does not weigh the evidence, consider evidence unfavorable to the State, or determine any witness' credibility." *State v. Butler*, 356 N.C. 141, 145, 567 S.E.2d 137, 140 (2002). As such, "the trial court is not required to determine that the evidence excludes every reasonable hypothesis of innocence prior to denying a defendant's motion to dismiss." *Lee,* 348 N.C. at 488, 501 S.E.2d at 343 (citation and internal quotation marks omitted). "[C]ontradictions and inconsistencies do not warrant dismissal" on a motion to dismiss because "the trial court is not to be concerned with the weight of the evidence." *Id.* at 488, 501 S.E.2d at 343 (citation omitted).

"The test of the sufficiency of evidence to withstand dismissal is the same whether the State's evidence is direct, circumstantial, or a combination of the two." *State v. Porter*, 303 N.C. 680, 686, 281 S.E.2d 377, 381–82 (1981) (citation omitted). "If, upon consideration of all the evidence, only a suspicion of guilt is raised, then the evidence is insufficient, and the motion to dismiss should [have been] granted." *Lee*, 348 N.C. at 488–89, 501 S.E.2d at 343.

Specifically, Defendant argues the State failed to present substantial evidence to support the jury's finding because it did not establish: (1) the posted speed limit on Highway 49, (2) Defendant's speed, and (3) the officers' precise speed in pursuit of Defendant. We consider each challenge in turn.

## A. Evidence of Posted Speed Limit

Defendant first argues the State did not establish what the posted speed limit was on Highway 49 because the only evidence provided was this testimony from Sergeant Rominger:

> **Prosecutor**: And is the speed limit posted on [Highway] 49?
>
> **Sergeant Rominger**: It is. I don't know if that part of Harrisburg is 35 [miles per hour] or 45 [miles per hour]. I think that right through there it may be 45 miles an hour.

Relying on *Hensley v. Wallen*, Defendant further argues Sergeant Rominger's testimony is not competent evidence of the speed limit because the State offered no evidence regarding whether this portion of Highway 49 was inside or outside

municipal corporate limits or subject to a different speed limit pursuant to an exception. *See* 257 N.C. 675, 678, 127 S.E.2d 277, 280 (1962). We disagree.

The determination of "speed limit is a mixed question of fact and law, *except* where the [North Carolina Department of Transportation] or local authorities, pursuant to [N.C. Gen. Stat. § 20-141], have determined a reasonable and safe speed for a particular area and have declared it by erecting appropriate signs." *Id.* at 678, 127 S.E.2d at 280 (emphasis added). In *Hensley*, our Supreme Court held witness testimony regarding the speed limit of a particular area was not competent evidence because the witness "did not allege that the approach to the scene of the collision was either a business or a residential district *or* that the proper authorities had posted any signs giving notice of any determined speed limit for the area." *Id.* at 676–78, 127 S.E.2d at 279–80 (emphasis added) ("It is noted that plaintiff did not say there was a posted sign in the area limiting speed to thirty-five miles per hour. She merely said the speed limit 'was 35.'"). Because there was no testimony or other evidence regarding whether there was a posted speed limit, the *Hensley* Court deemed it "necessary to prove the character of the district before the maximum speed permitted by law [could] be determined." *Id.* at 678, 127 S.E.2d at 280. The Court continued:

> Of course, if a highway sign declaring the speed limit to be thirty-five miles per hour had been posted in the area, it would have been competent for the witness to say so, describe the sign, and testify as to its location. When such a sign is present, nothing else appearing, there is a logical inference that it was erected by the proper authorities pursuant to [N.C. Gen. Stat. § 20-141].

- 8 -

*Id.* at 678, 127 S.E.2d at 280.

Here, unlike the witness in *Hensley*, Sergeant Rominger testified that the speed limit is posted on that portion of Highway 49. Because the speed limit is posted, there is a logical inference that it was erected by the proper authorities pursuant to N.C. Gen. Stat. § 20-141, and as such, Sergeant Rominger did not need to testify whether the approach to the scene of the collision was either a business or a residential district. *See Hensley*, 257 N.C. at 676–77, 127 S.E.2d at 279–80.

Defendant argues Sergeant Rominger testified that he did not know what the posted speed limit was. Conversely, the Record reflects Sergeant Rominger knew a "highway sign declaring the speed limit" had been posted in the area, described the posted speed limit as either thirty-five or forty-five miles per hour, and immediately clarified that he believed it was forty-five miles per hour "right through" where Defendant fled. *See id.* at 678, 127 S.E.2d at 280. Viewing this evidence in the light most favorable to the State, the testimony indicates Sergeant Rominger knew a posted speed limit existed and that it was either thirty-five or forty-five miles per hour. *See Lee*, 348 N.C. at 488, 501 S.E.2d at 343.

Accordingly, we conclude there is substantial evidence of the maximum posted speed limit on the portion of Highway 49 where Defendant fled because a reasonable mind could accept Sergeant Rominger's testimony as adequate to support this conclusion. *See Franklin*, 327 N.C. at 171, 393 S.E.2d at 787.

**B. Defendant's Speed on Highway 49**

Defendant next argues Sergeant Rominger's testimony was not competent to hazard more than a guess of Defendant's speed on Highway 49. The State contends Sergeant Rominger was competent to estimate Defendant's speed because he watched her speed past other traffic for half of a mile as he pursued her in the patrol car. We agree with the State.

"As a general rule, the opportunity of a witness to judge the speed of a vehicle under the circumstances of the case goes to the weight of the testimony rather than its admissibility." *Smith v. Stocks*, 54 N.C. App. 393, 398, 283 S.E.2d 819, 822 (1981) (citation omitted). Nevertheless, "where the witness does not have a reasonable opportunity to judge the speed, it is error to permit such testimony." *Id.* at 398, 283 S.E.2d at 822.

In North Carolina, it is well established "that any person of ordinary intelligence, who had a reasonable opportunity to observe a vehicle in motion and judge its speed may testify as to his estimation of the speed of that vehicle." *State v. Barnhill*, 166 N.C. App. 228, 232, 601 S.E.2d 215, 218 (2004) (citations omitted). "Absolute accuracy . . . is not required to make a witness competent to testify as to speed." *Id.* at 232, 601 S.E.2d at 218 (citation omitted). However, "[t]he observation must be for such a distance and over such a period of time as to enable the witness to do more than merely hazard a guess as to speed." *Stocks*, 54 N.C. App. at 398, 283 S.E.2d at 822 (citation omitted). Similarly, while "[i]t is not necessary for a witness to observe the action described continuously . . . the witness [must] have perceived

the incident sufficiently to have gained a rational basis on which to formulate an opinion." *Eason v. Barber*, 89 N.C. App. 294, 298, 365 S.E.2d 672, 675 (1988).

When the witness is a law enforcement officer, "it is not necessary that [the] officer have specialized training to be able to visually estimate the speed of a vehicle, and excessive speed of a vehicle may be established by [the] law enforcement officer's opinion as to the vehicle's speed after observing it." *State v. Royster*, 224 N.C. App. 374, 382, 737 S.E.2d 400, 406 (2012) (citation and brackets omitted); *Barnhill*, 166 N.C. App. at 232, 601 S.E.2d at 218 ("We find it relevant that if an ordinary citizen can estimate the speed of a vehicle, so can [a law enforcement officer].").

North Carolina courts often admit lay witness testimony about speed estimates in a variety of circumstances and distances, and our appellate courts have held a reasonable opportunity to judge the speed of a vehicle can exist even when a witness's observation is for a relatively short distance. *State v. Clayton*, 272 N.C. 377, 382–83, 158 S.E.2d 557, 561 (1968) (holding a witness had a reasonable opportunity while driving in the opposite direction on a two-lane paved highway to estimate a vehicle was traveling at 60 to 70 miles per hour based on an observation of 200 to 300 feet); *Jones v. Horton*, 264 N.C. 549, 554, 142 S.E.2d 351, 355 (1965) (holding as competent a witness's testimony that a vehicle was traveling "in excess of 60 [miles per hour], between 75–80 [miles per hour]" based on an observation at night over a distance of 400 to 500 feet); *Barnhill*, 166 N.C. App. at 233, 601 S.E.2d at 218 (holding witness had "ample opportunity" to estimate defendant's speed of 40 miles per hour based on

an observation of 750 feet, witness's "unobstructed view of the vehicle," the vehicle's engine racing, and the vehicle "bouncing" through the intersection); *Eason*, 89 N.C. App. at 298, 365 S.E.2d at 675 (holding a witness "had ample opportunity to observe plaintiff's vehicle" based on two separate observations, once at 250 feet and again at 150 feet).

In contrast, this Court held in *Smith v. Stocks* that a witness who had a "momentary glimpse" of plaintiff's truck for "a distance of only three feet before the impact" did not have a "reasonable opportunity to judge the speed of plaintiff's vehicle." *Stocks*, 54 N.C. App. at 398, 283 S.E.2d at 822 (citation and internal quotation marks omitted). Similarly, in *State v. Becker*, our Supreme Court concluded that a witness's testimony should have been excluded for lack of reasonable opportunity where the vehicle's speed was only observed for fifteen feet. 241 N.C. 321, 327, 85 S.E.2d 327, 331 (1955).

In the present case, Sergeant Rominger's opportunity for observing Defendant's speed was approximately a half of a mile—or about 2,640 feet. Comparatively, Sergeant Rominger's observation was more than five times as long as the witness's "reasonable opportunity" in *Jones v. Horton* (400 to 500 feet) and more than eight times as long as the observation in *State v. Clayton* (200 to 300 feet). *See Jones*, 264 N.C. at 554, 142 S.E.2d at 355; *Clayton*, 272 N.C. at 382–83, 158 S.E.2d at 561. Because Sergeant Rominger had a reasonable opportunity to judge the speed of Defendant's vehicle traveling on Highway 49, the excessive speed of Defendant's

vehicle may be established by Rominger's opinion. *See Royster*, 224 N.C. App. at 382, 737 S.E.2d at 406.

Moreover, unlike the witnesses in *Jones v. Horton*, *State v. Clayton*, and *Eason v. Barber*, who all observed a speeding vehicle as it approached them, Sergeant Rominger's observation coincided with his active pursuit of Defendant's vehicle. *See Jones*, 264 N.C. at 554, 142 S.E.2d at 355; *Clayton*, 272 N.C. at 382–83, 158 S.E.2d at 561; *Eason*, 89 N.C. App. at 298, 365 S.E.2d at 675. According to his testimony, the pursuit caused him to travel "at a relatively high rate of speed[,]" as he simultaneously observed Defendant was "going way faster" than his own patrol car. Based on his observation, he testified he "could see [Defendant's] car going towards Charlotte [at] a high-rate of speed and going in and out of vehicles." According to Sergeant Rominger, Defendant "was going too fast for the conditions" at an estimated speed of "over a hundred miles an hour."

Defendant argues Sergeant Rominger did not have a reasonable opportunity to observe her speed because there was some delay before the officers were able to enter the highway, the pursuit was "during a busy traffic period," and Sergeant Rominger lost sight of her after half a mile. Nonetheless, because we have already determined Sergeant Rominger had a reasonable opportunity to judge Defendant's speed, these contentions go to the weight of the testimony rather than its admissibility. *See Stocks*, 54 N.C. App. at 398, 283 S.E.2d at 822 (citation omitted); *State v. Green*, 77 N.C. App. 429, 431, 335 S.E.2d 176, 177 (1985) ("The ability of the

witness to accurately determine the speed is a question of credibility rather than a question of admissibility."). Accordingly, it is for the jury—not the trial court—to weigh the evidence, consider evidence unfavorable to the State, or determine any witness's credibility. *See Butler*, 356 N.C. at 145, 567 S.E.2d at 140.

Drawing all reasonable inferences in the State's favor, the evidence establishes Sergeant Rominger not only had "ample opportunity" to observe Defendant's speed for an extended distance during the pursuit, but he was also able to compare her speed to the other vehicles driving on Highway 49 at that time. *See Miller*, 363 N.C. at 99, 678 S.E.2d at 594. Sergeant Rominger's testimony supports a reasonable inference of Defendant's guilt. *See id.* at 99, 678 S.E.2d at 594.

Therefore, we conclude Sergeant Rominger had a reasonable opportunity to observe the speed of Defendant's vehicle, and as such, there is substantial evidence Defendant was speeding in excess of fifteen miles over the posted speed limit. *See Barnhill*, 166 N.C. App. at 233, 601 S.E.2d at 218; *Eason*, 89 N.C. App. at 298, 365 S.E.2d at 675; *Lee*, 348 N.C. at 488, 501 S.E.2d at 343.

## C. Evidence of Officers' Precise Speed in Pursuit

Lastly, Defendant contends no evidence corroborated Sergeant Rominger's testimony because the jury never heard evidence about how fast the officers were traveling. The State argues that corroborative evidence, or the lack thereof, goes to the weight of Sergeant Rominger's testimony, not its existence. Additionally, the State maintains there was ample corroborating evidence, including the photo of

Defendant's catastrophic single car wreck and the details provided by the testimony given by the responding officers. We agree with the State.

A motion to dismiss "should not be granted against the State if there [is] any evidence tending to prove the fact in issue[.]" *Lee*, 348 N.C. at 488, 501 S.E.2d at 343 (citation and quotation marks omitted). "The trial court need only satisfy itself that the evidence is sufficient to take the case to the jury; it need not be concerned with the weight of that evidence." *Franklin*, 327 N.C. at 171, 393 S.E.2d at 787 (citation omitted). When sufficient evidence is presented, it is ultimately "for the jury to say whether it is convinced beyond a reasonable doubt of defendant's guilt." *See id.* at 171–72, 393 S.E.2d at 787.

In this case, even absent testimony regarding the officers' precise speed during pursuit, the State presented substantial evidence of Defendant's guilt. Specifically, Sergeant Rominger testified Defendant was "going way faster" than the officers while they pursued her "at a relatively high rate of speed" with "blue lights and siren" on. Despite active pursuit, Defendant outpaced the officers, passing beyond their line of sight, before losing control and wrecking shortly after. The trial court admitted into evidence a photograph of Defendant's vehicle, taken after it was involved in the single-vehicle collision. Although the jury never heard testimony regarding the officers' precise speed while in pursuit of Defendant, this contention ultimately goes to the weight of the evidence, not the admissibility of Sergeant Rominger's testimony

or the other corroborative evidence. *See Green*, 77 N.C. App. at 431, 335 S.E.2d at 178.

At the close of all the evidence, the State had presented sufficient and substantial evidence to send the matter to the jury for consideration of whether Defendant was speeding in excess of fifteen miles per hour over the legal speed limit on Highway 49. *See Franklin*, at 171–72, 393 S.E.2d at 787.

## VI.    Conclusion

We hold the State presented substantial evidence to prove each element of felonious speeding to elude arrest and that Defendant was the perpetrator of the offense. Accordingly, we discern no error in the trial court's denial of Defendant's motion to dismiss.

NO ERROR.

Judges ZACHARY and WOOD concur.